Page 18-3181 Tom Kondash et al. v. Kia Motors America Inc. et al. Oral argument, 15 minutes per side. Mr. Lazatin for the appellants. We need an extra pen over there. Usually they've got about 10 of them out here. Good morning, Your Honor. As I indicated, I'd like to reserve three minutes for rebuttal, if I could. All right. Very well. Your Honors, good morning, and may it please the Court. Carlos Lazatin on behalf of appellants. The district court below committed two critical errors in its sealing decision, each of which requires reversal, the first of which is that the court committed legal error because it applied the wrong legal standard, and number two, the court found clearly erroneous facts, that is, facts that are directly contradicted by the undisputed record below. Let me go through each of these. On legal error, Your Honors, the clearest illustration of the court having applied the wrong legal standard is document number 100, a number of documents that are called Weibull analyses. These are essentially, Your Honors, like actuarial tables for a car company. These tell a car company how many warranty claims, based on its confidential warranty data, it can expect to get in the door at three years out, at five years out, at 10 years out. Quintessential trade secret material. It tells you how much it's going to cost. It tells you how much is budgeted by the company and how much money is going to be left over at each of those points in time. We argued this to the district court below, and the district court's response in its order was to reject these arguments and to explain that this is because this information, I quote, is of significant relevance to prospective CLASC members given the implications for driver safety. Your Honors, under this court's precedence, that is not the question. The question is whether there is a trade secret here. And a trade secret in here is whether or not the public has an interest, whether or not documents are relevant to a case, and the district court never addressed or answered that question. On the question of clearly erroneous facts, Your Honors, again, clearly, directly contradicted. I'm sorry. I wanted to ask, are you saying that notwithstanding your argument about trade secret, that the court should not have considered the public interest at all, since obviously warrant claims are going to relate to some issue to the public? Are you saying there was error for him to even consider that in the analysis? It was error to consider. Under this court's standards, dating all the way back to Brown and Williamson in 1983, the trade secret is a recognized exception to the public's right of access. In Brown, the court said the court should not seal records unless they are trade secrets, and so on. In Schoen Group, the court said that only trade secrets and a number of other exceptions are sufficient to overcome the public's right of access. The dispositive inquiry is whether it is a trade secret. It is not the trade secret. That's the first. I mean, the Schoen Group has a three-part test, whether the party has shown a compelling interest in the record secrecy, which is the trade secret determination. The second consideration is whether that interest outweighs the public interest, even if it is a trade secret. And third, of whether the party has narrowly tailored the request to seal the records. And so there's a three-part inquiry, I believe, not just one, is there not? There is, Judge Griffin, there is generally speaking an inquiry as you described, that is to say a balancing test. That is the inquiry. That's the analysis, isn't it? Well, there's a balancing test of the public's right to know versus whatever compelling interest. That's the second analysis, and the third one is the narrowly tailored. That is correct. That is correct. Trade secrets, those always outweigh, they're always. I don't think that's what Schoen Group says. I mean, maybe I could give you the quote here. Schoen Group, the Schoen Group, the excerpt from Schoen Group that I quoted indicates that only trade secrets and a number of other exceptions, I think privilege and miners' names and so on, typically overcome. Typically. Typically overcome. That is not necessarily. Typical is, okay, that qualifies it. So it's not in every instance. I think your argument was every time you had a trade secret, therefore, it has to be sealed. And I don't think that's the law. I believe that is the law, Your Honor. Typically. Typically doesn't mean in every case. No, the adverb typically in that particular sentence, which lists a number of exceptions, trade secrets, privilege, I think miners' names being mentioned, I think, was the other one. Those are the typical exceptions. There may be other exceptions. That's what typically modifies. But if Your Honor goes back to the Brown and Williamson case, which is where Schoen Group got this standard, Brown and Williamson was very clear. It said courts should not seal records unless they would reveal legitimate trade secrets. The court didn't say unless legitimate trade secrets outweigh public interest. It said unless they are legitimate trade secrets, period. It doesn't say they must, then. It doesn't say they must seal records if there's trade secrets involved. It said it should seal them if they're trade secrets, period. It didn't import a balancing test into that inquiry. Well, sure. How would this qualify as a trade secret, a list of warranty claims? The warranty claims? Yeah. The warranty claims. You could ask to have not as much uniqueness as a patent, but some kind of uniqueness. Right. The warranty claims are based on confidential warranty data that come in the door, KIA, and it's a statistical analysis. How is that a trade secret, that you have warranty claims come in? It's the number of warranties. If I could step back for a moment, Your Honor. KIA has an industry-leading, you may have heard of it, 100,000-mile warranty. It's the longest in the business, the first company to introduce that. And the reason that KIA is able to calculate that it can afford to offer such a warranty is because it has confidential data that it has calculated would result in X number of claims, 3 years out, 5 years out, 10 years down the road, that nobody else knows. If a competitor were to get hold of this information, okay, the competitor could say, Whoa, I didn't know, let's say Ford gets hold of this. Well, I didn't know KIA was spending that much on that warranty. Maybe we ought to adjust our practices and exclude this particular part. I don't see how that's a trade secret. That's just information. And you say you don't want your competitors to have that information, but I don't see there's any secret in the trade that, anyway, that's not what I would normally consider a trade secret. Let me address that point, Your Honor, if I could. Because I think one thing I want to make clear is that when we think of trade secrets, I think in the lay sense, we think of things like the Koch formula. We think of things like the source code for your iPhone. Okay? We think of things like the design for a KIA car. Usually statistics. Right. Right. That's kind of what you want. Right. And what I'm arguing for is that that understanding of a trade secret is specifically supported not only by the case law, but by the trade secret statute. This is a putative class action, and down the road, just like in Shane Group, people will have an option either to opt in the settlement or opt out of it, and they need to know the basis of the claim and the strength of it and all this stuff. And if you start hiding all these figures from the class members, does that further the public good in allowing them to have transparent information as to the case? Your Honor, nothing is being hidden. That's what you're trying to do, isn't it, by sealing this stuff? If and when a class is certified, as we've argued in our papers, every class member in this class will have full access to any of these documents. Even under seal? Even under seal under the terms of the protective order in this case. The protective order is for discovery purposes, right? That's right. And the sealing is sealing these documents, I thought, forever. No. Class members will absolutely have access to these records as class members under the terms of the order in the case. We're not hiding anything. There were several thousand class members, weren't there? Several hundred, anyway. There may be. Are you going to get out, then? Pardon me? Aren't you afraid that these figures are going to get out? You release it to several thousand. There is always a risk of that happening, and we may have a cause of action if that happens. Why is it so important for all the rest of the public not to know, then? Because, Your Honor, take some of the investigation documents at issue, right? The trade secret statute in Ohio recognizes not just the design documents I mentioned, but a process, a procedure, a method, a technique. Those are straight out of the statute. The cases that we cited, Grayson, McDonnell, Velasco, all sealed exactly these kinds of investigation-type documents. You weigh that against the public's right to know, particularly if you've got a product liability or a product defect case. The allegation is that you're putting an unsafe product in the stream of commerce out there, and the public really needs to know that there may be some defects in these Kia cars, and you want to do a protective order sealing all this information from the public. I think that's a high standard when you're balancing your need for statistics that you don't want your competitors to know as to how you do warranties and this stuff with the public's right to know that there may be some real problems in your vehicle. Let me say this, Your Honor. I tend to balance that more in the favor of the public rather than the corporation. The public, as I mentioned, is going to get hold of these documents in terms of class members who have to decide whether or not they're in. Let's not seal them, then. Don't you think some of these class members could be persuaded to turn it over to a competitor? They could, and we may have a cause of action against that particular class member for trade secret theft or what have you. But the point is that once you turn over these types of documents, it's not just going to the general class members, the public, the Fords of the world. Have you all heard of the car company in China, Geely? You've never heard of that car company because it doesn't manufacture cars in this country because it doesn't have the quality control processes and safety standards that we set in this country. And you are turning this all over. These are all processes and techniques and so on that Kia has developed over the 30 years that it's been in this country. Let me ask you the following. Since you said that this is not a permanent sealing, you said that it would be for a limited time and you're going to have to turn this over to this if the class is certified, given those facts, what is the harm that Kia seeks to avoid by the sealing now? Because you're going to have to give it over ultimately. And the other point is that this data about the warranty claims seems to be information not developed within Kia but information that Kia is accumulating based on claims filed by the public. So doesn't that argue against sealing? Your Honor, to clarify, the sealing that we're asking for would remain in place after a class is certified. Class members could get hold of the data. Individual class members could request and get hold of the data. But that doesn't mean that the whole wide world, including Ford, including Geely, including our competitors, are going to get hold of the confidential data. That's precisely what we're trying to guard against. When you talk about Ford getting hold of it, on this warranty information, what exactly would Ford or another competitor be getting hold of? How many claims have been filed based on the warranties? To be clear, Your Honor, these are not just the claims that have actually been filed. They are confidential predictions of our in-house statisticians of how many future claims there are going to be in three years, in five years, in ten years. How much is that going to cost the company? That's extremely confidential information that the Fords of the world or the Geelys of the world can get hold of and decide, oh, maybe we better adjust our warranty. Or, oh, it's not costing Kia so much. Maybe we can offer a 100,000-mile warranty after all. That's the competitive harm. Based on the Shane analysis, if that's what the fear is, couldn't there be redaction in certain parts that would still allow these documents to be unsealed and that critical information? Because it seems like there's only a small part of that that would be really confidential. And why wouldn't redaction work on that part? We have offered, the record's clear below, we offered redactions of, so the warranty, raw warranty data, people making warranty claims to their dealers, that coming in, we offered all of that out the door. What cannot be redacted is on Exhibit 100, for example. It's the future predictions of warranty claims. It's the future predictions of the cost of those warranty claims. It's Kia's budgets for paying for those warranty claims. That's what Exhibit 100 is. And that can't be redacted. Do you have another example that's maybe closer to the usual type of trade secret? Sure, Your Honor. The pricing data is generally considered to be, this court has sealed, and I think some Procter & Gamble cases that we've cited, confidential pricing data. There is a pricing, a series of pricing documents at issue here. Certainly there's MSRP, which we, in our negotiations with the other side, have said that can go out the door. People know what MSRP is. But everything else, dealer invoice prices, what's called a holdback, which is a payment we make to dealers for selling a car, you know, quickly. How much we charge fleet owners, rental car companies, taxi companies, et cetera. But the formula for this glass that shatters, is that? The parties agreed on those sorts of design documents. Those have been sealed. Judge DeLotte sealed those. But on these other documents, including testing, confidential testing documents, the kind of tests that we run on them, Judge DeLotte said, if they're from before you put the car on the market, I'm going to seal those. But if they're from after you put the car on the market, and you're trying to figure out what went wrong with it, I'm not going to seal those. Distinction makes no sense. It's exactly the same tests. Exactly the same tests. We're out of time. You can use your rebuttal now if you want, or you can... No, I'd like to reserve, please. Thank you. Good morning. Good morning, Your Honors. May it please the Court. David Stein on behalf of the plaintiff below, Tom Condash. I'd like to start by addressing the legal standard that the district court applied. It comes right from Shane Group, Judge Kethledge's opinion from... Well, she, Judge DeLotte, purported to apply it. I'm not sure she did, though. I don't think she went through the three-part analysis. I think she stopped at the first analysis. I mean, she does cite it in her decision, but I think her explanation... Well, I don't think she goes through the three steps, and I think it's cursory, it's perfunctory. She relies upon stipulation or agreements of the parties, which is contrary to Shane. Shane says that the parties cannot agree on this. The public has an interest in it, and the public interest must be considered by the court, whether or not it's raised by the parties. So, I mean, I start with she says she's applying it, but I'm not so sure, so go ahead. Sure. And I'll maybe start at the last point you made about how a stipulation isn't enough. It isn't enough. That's what Shane holds, isn't it? And I agree. And to Judge DeWatt's credit, the vast majority of this process below was sua sponte. We put in, when we filed our motion for class certification, a brief motion to seal saying these are KIA's documents, they've been marked confidential, it's up to KIA to come forward and make a showing. Judge DeWatt then took the initiative to hold an evidentiary hearing with a witness who testified from KIA about the nature of these documents. She had two rounds of briefing with, I think, a total of five declarations from KIA. Now, I think the quality of the evidentiary showing from KIA was lacking, but in terms of Judge DeWatt's decision to give ample opportunity and scrutiny, I mean, she gave these documents a close look. She also had us spend quite a bit of time, you're right, seeing if we could winnow out the documents that were truly in dispute. Did she give an adequate explanation, as is required by Shane, for her rulings? I believe she did. And to be clear, the documents that we don't contest that KIA has some legitimate trade secrets in the company, of course. Well, we have to decide that ourselves, don't we, because you can't stipulate to that. That's correct. But, you know, when we talk about— You represent the plaintiff, don't you? I do. I asked. You hope it will be a plaintiff. Pardon me? You say you have several plaintiffs already, or are you waiting for the class to be certified? There's one named plaintiff, and our class certification papers are on file. Who do you represent at this point? Just the one? The named plaintiff in the proposed class. Why do you care if they're sealed? Not all the stuff we've talked about why the public should care, but why do you care? How does your client care? To be candid, Your Honor, I'm not sure it really is my client's interest. It's the public at large that has this interest, and it's the absent class members that have this interest. So you're representing the public at large? I think that's the nature of this court and the Supreme Court's precedence. They recognize that the public at large, the American tradition, is to have an open court system, and the public's interest in access to the court documents. And part of it— That's the presumption. The presumption is everything that's filed in court is public information. Right. And the burden on the party that wants to seal it and keep it hidden from the public is upon the party that wants to keep the documents under seal, and the presumption all favors the public, right? That's exactly right. There's a strong presumption against sealing and a heavy burden that exists in all cases. Now, this case is special because the subject matter of the litigation is of public importance and it's a class action, so under Shane Group— I can't think of a product's defect, although this is a sunroof, but still a sunroof is— I mean, the glass and everything else is a danger, a real danger. Right. And so you start with a strict standard that the proponent has to meet, and then in this type of case it gets ratcheted up. I mean, for me at least, that seems like about as strict a standard as you come across in civil cases. And in the face of that, despite giving multiple opportunities, the evidence that Kia actually came forward with here is very underwhelming. As Judge DeWatt put it, it's basically a formulaic recitation of the trade secret elements. Mr. Stein, you said just a moment ago that you agree or you readily accept that Kia has some trade secrets here, but you also seem to suggest that there are some that are not trade secrets. So what do you think is protectable by trade secret and that could legitimately be sealed and what is not covered? Thank you, Your Honor. So from my perspective, and I think Judge DeWatt's perspective below, documents that lay out the design specifications, like how do you actually build one of these vehicles or how do you build one of the components within the vehicles. It's not hard to see how a competitor, if they were given step-by-step instructions how to build what Kia has figured out how to build, could recreate that. Okay. Well, I don't want you to go through all of that, but what about this budget information that Kia says should be protected by trade secret because it could disadvantage Kia if competitors know how much they're projecting they'll have to spend on warranties or how much they've allocated, that all of that could impair Kia's, I guess, financial health and thus should be protected by it. Why isn't that a trade secret? So we're talking there about the so-called Weibel projections, which produced out how many warranty claims it will have in the future. If you look at the declaration that Kia submitted, there's absolutely no reference to costs. What Kia is talking about is this concept that General Motors or Ford or something like that is going to use the failure rates here as a benchmark and try and mimic them in their own vehicles, which I think is rather implausible given how many problems there have been with these sunroofs. They've led to litigation, federal investigations, international investigations, media scrutiny, and so I think that's just an implausible position to take. And on top of that, Kia voluntarily shared some of these projections already publicly with the National Highway Traffic Safety Administration and in doing so compared their Weibel projections with General Motors' Weibel projections for the same part. So is it your position that even if one could plausibly characterize that as a trade secret, Kia has voluntarily then lost that status by disclosing it to NHTSA and other entities? That's absolutely part of it, and that's one of the factors that Judge DeLau focused on in her opinion. Now to be clear, Kia hasn't exposed every single Weibel projection for every one of its vehicles, but I think it's indicative of a lack of trade secret when it voluntarily makes it public. It didn't ask for confidential treatment. They compared it to a competitor's projection, so that was public as well, and the Weibel analysis is used throughout the industry. I mean, there are Wikipedia pages on this. It's all over. It's a general engineering principle. It's just a formula to take existing warranty numbers, which are public. Kia is not seeking to seal the existing warranty claims, and then you just project out how many going forward are going to fail. Okay. Thank you. And just to be clear, of all the documents at issue, that's just a single document. That's Exhibit 100 where the Weibel projections are contained. To get back to the standard that the court applied, the court progressed throughout its opinion, and it started by setting forth a rather thorough discussion of the legal standard, and then as the opinion goes on, it naturally becomes more concise with each new category of documents the court discusses. But I would say that the court begins by citing and quoting from Shane Group extensively, and it does that separately from the trade secret analysis. So it starts by saying, under the U.S. tradition of open courts, there's a strong presumption against sealing. There's a heavy burden. It got into the balancing test that Your Honor referenced, that the greater the public interest, the higher the level of evidentiary showing that's required from the defendant. And then only after setting forth that standard did the court then address the substantive requirements of Ohio law for trade secret analysis, such as it must be a secret, it must be something that derives economic value from not being known generally. And then when the court proceeded to discuss the different categories of documents at issue, it continued with that analysis. It would discuss the public interest, which raises the burden, and then it would discuss its analysis of the documents and whether they looked like trade secrets. And what the district court said is, in her experience, and having looked at these documents carefully, they look like routine investigation documents. They look like run-of-the-mill pre-litigation reports. They don't look like trade secrets. I mean, you say that she not only recited the standards of Shane Group, but then she applied them. I mean, I see her setting forth the Shane Group standards on page 2 of her opinion, and she basically just quotes them. But I don't see her applying it in the body of the opinion. I mean, she talks about what's trade secrets and what's not, but where does she do the balancing and where does she do the analysis of narrowly tailoring the order? Where is that in her opinion? Can you cite it to me? Sure. So I think perhaps the most robust example is on pages 7 and 8, where the court discusses the category of investigation documents. And if you look at page 8, there's a discussion. What paragraph? What line? Sure. The middle paragraph. Okay. The second sentence refers to the lack of narrowly tailored redactions. And then in the final paragraph of that page, there's a citation to Shane Group and noting that the document's contents are of great public interest, particular to drivers concerned about their safety and class members interested in their legal claims in this case, which, as we've discussed and as the court recognized earlier in its opinion, that elevates the requisite evidentiary showing by the proponent of sealing. And as the court had just explained in the preceding paragraph, the evidentiary showing was lacking here. It doesn't show a procedure or process that drives independent economic value from not being known. These are routine documents. They're the type of reports that courts see all the time that are generated pre-litigation about what's known and what's being done. Thank you. If I could just briefly address this. How about the example that the opposing counsel gave of this warranty experience? Do you think that's a trade secret? So the raw totals of how many warranty claims there have been, Kia acknowledges is not a trade secret and is not on appeal asking those totals to be sealed. And so all that's left. Can you stand there and ask it to be sealed? What's left is a single document, which is Exhibit 100, which is the projections of the warranty totals. That's what I'm talking about. You think that's a trade secret? I don't. And, you know, for the reasons that I hinted at earlier, it's a type of projection that's done throughout the industry. The fact that Kia does this type of projection is known already. Some of the actual calculations are already public. What do you think? My next one is, what do you think of something like that that's retained and is highly confidential? They protect that information and everything, but it doesn't meet the definition of a trade secret. That's certainly possible. Do you think they should be done with it? Should it be sealed or unsealed? Well, if it doesn't rise to the level of trade secret, then it certainly cannot be sealed. And that's, I mean, that dates back to Brown and Williamson, this court's opinion, where it says it's perfectly natural that corporate litigants are going to have information they don't want to share with their competitors and with their customers. That's a natural instinct, but it's not enough to overcome the strong presumption in favor of public interest. That's just not how our court system operates. And so if I could just briefly talk about this idea of sealing the documents but allowing class members to have access to them. I mean, I think, as I noted, the public at large has a right of access to open courts. This is recognized in Shane Group. The public may have an interest in just understanding the judicial process, the conduct that gave rise to the litigation. The fact that this is a class action, in other words, is not the only reason that the documents should be unsealed. It elevates the standard, but it's not a standalone reason for sealing or unsealing. And I think it's a rather dangerous proposal to allow class members to have access to legitimate trade secrets and other sensitive information. There are cases where there are Social Security numbers that are sealed, personal medical histories are sealed, and legitimate trade secrets. I mean, it's not hard to imagine a case where the formula for Coca-Cola would be in evidence and would be sealed. And the notion that thousands or millions of class members could have free access to those documents, I think, is kind of a startling proposal and not at all consistent with what judges think they're doing when they're sealing court records. So are you arguing that they should be sealed? Where are you going with this? I'm saying that the proposal to seal but allow class member access is not a good proposal. Did the judge so rule? No, no judge has, as far as I can tell. Okay, so is this just proposed today? Well, it's something that KIA has proposed in its brief as a, I guess it's sort of a compromise proposal from KIA, which is allow the documents to be sealed, but that means any class member who wants them can come look at them. All right, so you're saying there's no precedent for doing that? It doesn't seem like it makes any sense to me either. I would agree. So are you saying that that very proposal would argue against treating those documents as trade secret? Because if they were trade secret, you would not, I mean, logically they would not be available to class members because that would be antithetical to all the trade secret rules. Right, if it's truly sensitive information that needs to be held closely secret, why would we allow thousands or millions of people to access it? So it's either, either should be sealed or should not be. This in-between thing doesn't make any sense, I guess, is what you're saying. That's right, Your Honor. I see I'm out of time unless there are any other questions. Any questions, Judge Donald? I'm sorry, I've got to include you here all the time, but. Well, no, I felt perfectly included and I have no additional questions for Mr. Stein. Mr. Berlesman, any further questions? Sorry. Thank you. Rebuttal? Yes, thank you, Your Honor. Mr. Stein talked at length about the public's interest. And I just want to point this out. That there is no better proof, there is no better evidence that Mr. Stein and the plaintiffs' counsel don't really believe that the public has the right to access, a burning need to access these documents than the fact that these same law firms are representing another plaintiff in a class action in California on exactly the same allegations about sunroofs. And they have filed exactly the same types of documents, Your Honors have pointed out, that are at issue here. And not once have they objected, opposed, moved to seal any of those documents. And those have been sealed now for over a year. So the idea that the public interest is at stake, as the Apple v. Samsung decision suggests, that the whole sealing process could be used for strategic purposes, and that's part of the danger here of allowing this type of thing out in the open. I want to talk about one category of documents we haven't really covered. Before you move on, your hybrid proposal, has any court ever accepted that? The hybrid proposal is simply the default under the protective order that's governing this case that Kia relied on. We're not talking about protective orders, we're talking about sealing documents, which is a whole different standard than a protective order. Protective order is for discovery purposes, and I think the standard is good cause. And sealing documents is a whole different analysis. So has any court ever adopted your proposal that you would seal the documents however you would give them to the class members? And if this is totally new, why is it the first time it's ever been done? I can't name a specific example for you, because I think it's fairly routine. That's the default under Judge DeLatte's protective order. We did not waive, Kia did not waive its confidentiality rights by turning over this information to the plaintiff. Their name plaintiff client has this information. He has access to it. And by the same token, we wouldn't be waiving our rights if we were to turn it over to class members, were there to be a class and were they to be parties. Just half a minute remaining, if I could just talk about the remaining documents that we haven't covered, which are the investigation documents. These are documents that lay out specifically what details are relevant, what kind of testing ought to be conducted, what kind of hypotheses the company is considering, who is involved in the testing, what the testing results are, and so on. Those are exactly the types of documents that have been recognized as worthy of sealing by the courts in the cases we cited, Grayson, McDonald, Velasco, which involve public safety issues, which involve car defects, and so on. We submit those are additionally documents that come under the trade secret heading and should be sealed. Any further questions? Thank you, counsel. Case will be submitted. Thank you for your argument.